IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| FIRST BENEFITS, INC. and UNION SERVICES OF AMERICA, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> AMALGAMATED LIFE INSURANCE COMPANY, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> CIVIL ACTION NO. 5:13-CV-37 (MTT) |

# ORDER

This matter is before the Court on the Plaintiffs' motion to compel arbitration. (Doc. 28). For the following reasons, the motion is **DENIED**.

## I. BACKGROUND[1]

Plaintiffs First Benefits, Inc. ("First Benefits") and Union Services of America, LLC ("Union Services") sell and service employee benefits products. They contend that in late 2004 they formed a partnership with Defendant Amalgamated Life Insurance Company ("ALICO"), which provides insurance and benefits programs for employees, to combine their resources and increase their profits. The Plaintiffs allege ALICO turned over most of the accounts they brought to the partnership to another company, Benefits Associates. The Plaintiffs allege claims of (1) breach of partnership agreement; (2) fraud and deceit; (3) constructive trust and breach; (4) breach of fiduciary duty; (5) accounting; (6) conversion of accounts; (7) misappropriation of business opportunities

---

[1] The allegations forming the basis of the Plaintiffs' claims are set forth in the Court's August 6, 2013 Order denying the Defendant's motion to dismiss, so the Court includes only a brief discussion of them here. (Doc. 23).

of partnership; (8) breach of private duty; (9) attorneys' fees; and (10) punitive damages.

ALICO has asserted a counterclaim against Union Services for unjust enrichment. ALICO alleges Roscoe J. Douglas, one of Union Services' owners, and ALICO entered into an agency agreement effective March 1, 2006. (Docs. 24 at 14 ¶ 1; 24-1). The purpose of the agreement was for Douglas to solicit applications for certain group life insurance and group disability insurance policies issued by ALICO. (Docs. 24 at 14-15 ¶ 3; 24-1 at ¶ 1). ALICO agreed to pay Douglas commissions for insurance policies issued as a result of his efforts. (Docs. 24 at 15 ¶¶ 7-8; 24-1 at ¶ 8). The amount of commissions ALICO paid Douglas was based on the Enrollment Services Compensation Schedule attached to the agreement. (Docs. 24 at 16 ¶ 15; 24-1 at 10).

On September 13, 2007, Douglas assigned the right to receive these commissions to Union Services. (Docs. 24 at 16 ¶¶ 9-11; 24-2). Beginning in July 2008, ALICO allegedly paid Douglas commissions based on policies that he did not actually enroll or procure under the agency agreement. (Doc. 24 at 17 ¶ 17). ALICO believes Douglas provided these overpayments to Union Services and seeks to recover them. (Doc. 24 at 17 ¶ 18). The existence of the agency agreement between ALICO and Douglas is also a basis for ALICO's defense that there was no partnership between ALICO and the Plaintiffs. ALICO contends that any relationship upon which the allegations in the complaint are based was between ALICO and Douglas. (Doc. 24 at 13 ¶ 2).

The Plaintiffs argue that the entire case, or at the very least ALICO's counterclaim against Union Services, must be submitted to arbitration based on the

arbitration provision in the agency agreement between Douglas and ALICO.[2]  Though it makes several arguments in opposition, the Defendant's contentions can be summarized as: (1) the claims at issue are not subject to the arbitration clause; and (2) the Plaintiffs cannot enforce the arbitration clause because neither of them is a party to the contract containing the clause.[3]

## II.  DISCUSSION

### A.  Applicable Law

The Parties have not specifically addressed whether the Federal Arbitration Act ("FAA") applies to the arbitration provision.  The Plaintiffs contend that, whether the FAA or the Georgia Arbitration Code applies, the case must be submitted to arbitration.  Without addressing the FAA, the Defendant contends interpretation of the arbitration clause is governed by New York law based on a choice-of-law provision in the agency agreement.

Pursuant to the FAA, a written arbitration provision in a contract "evidencing a transaction involving commerce … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The FAA defines "commerce" as including "commerce among the several States."  9 U.S.C. § 1.  The Supreme Court has determined the words "involving commerce" in the FAA signal Congress' intent to exercise its commerce power to its full extent, and "evidencing a transaction" means that the contract in fact involved interstate

---

[2] "In the event of any dispute between the Company and the Agent/Broker under this agreement which the Company and the Agent/Broker are unable to resolve, the dispute shall be submitted to arbitration at the request of either party … ."  (Doc. 24-1 at ¶ 17).

[3] The Plaintiffs failed to reply, despite a 14-day extension pursuant to M.D. Ga. L.R. 6.2.

commerce "even if the parties did not contemplate an interstate commerce connection." *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 277, 281 (1995).

The Court need not determine whether the arbitration provision is governed by the FAA[4] because state contract law still determines whether an enforceable contract or arbitration agreement exists between the parties. *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005). The FAA only preempts state laws that undermine its goals and policies. *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 477-79 (1989). State laws that "prohibit[] outright the arbitration of a particular type of claim" or apply a purportedly general rule of applicability in a way that discriminates against arbitration provisions are displaced by the FAA. *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1747 (2011). The Eleventh Circuit has held state contract law governs whether a non-party to a contract may enforce an arbitration provision against a party. *See Lawson v. Life of the S. Ins. Co.*, 648 F.3d 1166, 1171 (11th Cir. 2011) (finding that *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009), clarified state law governs this question). Thus, state law applies to determine whether an agreement to arbitrate exists between the Parties, regardless of whether the FAA also applies.

The agency agreement states: "The laws of the State of New York without giving effect to its conflict of laws provision shall govern all matters concerning the validity, interpretation and performance of this agreement." (Doc. 24-1 at ¶ 13). In diversity cases, the court applies the choice-of-law rules of the forum state. *Interface Kanner, LLC v. JPMorgan Chase Bank, N.A.*, 704 F.3d 927, 932 (11th Cir. 2013). Pursuant to Georgia law, contractual choice-of-law provisions are enforced unless it would be

---

[4] Considering the broad scope of the FAA, it probably is.

contrary to public policy or prejudicial to the interests of Georgia to do so.  *CS-Lakeview at Gwinnett, Inc. v. Simon Prop. Grp., Inc.*, 283 Ga. 426, 428, 659 S.E.2d 359, 361 (2008) (citing O.C.G.A. § 1-3-9)[5]; *Scales v. Textron Fin. Corp.*, 276 Ga. App. 232, 233, 622 S.E.2d 903, 904 (2005).  The Plaintiffs have not pointed to any public policy the application of the choice-of-law provision would contravene.  Accordingly, New York law governs the existence and scope of the arbitration provision.

      B.      **Plaintiffs' Motion to Compel Arbitration**

While New York law generally requires "'an express, unequivocal agreement'" to arbitrate, that standard is preempted for agreements governed by the FAA because of its discriminatory treatment of arbitration agreements.  *Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela*, 991 F.2d 42, 46 (2d Cir. 1993) (quoting *Marlene Indus. Corp. v. Carnac Textiles, Inc.*, 45 N.Y.2d 327, 380 N.E.2d 239, 242 (1978)).  For arbitration agreements governed by the FAA, courts apply the ordinary preponderance of the evidence standard that governs the existence of other types of agreements under New York law to determine whether an agreement to arbitrate exists.  *Id.*  Even under this lesser standard, the Court finds the Plaintiffs have not met their burden.

The Defendant contends that because the Plaintiffs are not parties to the agency agreement, neither may enforce its arbitration provision.  As to Plaintiff First Benefits, the Defendant is undoubtedly correct.  As a general rule, "the right to compel arbitration does not extend to a party that has not signed the agreement pursuant to which

---

[5] "The laws of other states and foreign nations shall have no force and effect of themselves within this state further than is provided by the Constitution of the United States and is recognized by the comity of states. The courts shall enforce this comity, unless restrained by the General Assembly, so long as its enforcement is not contrary to the policy or prejudicial to the interests of this state." O.C.G.A. § 1-3-9.

arbitration is sought unless the right of the nonsignatory is expressly provided for in the agreement." *Greater N.Y. Mut. Ins. Co. V. Rankin*, 298 A.D.2d 263, 263, 748 N.Y.S.2d 381, 382, (N.Y. App. Div. 2002).  Neither Plaintiff signed the agency agreement or is mentioned in it.  Under certain principles of state contract law, non-parties may either compel arbitration or be compelled to arbitrate.  *Lawson*, 648 F.3d at 1170 (identifying "assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel" (internal quotation marks and citation omitted)).  However, the Plaintiffs have not pointed to an exception that would allow First Benefits to enforce the arbitration provision.

The Plaintiffs also have not shown how Union Services can compel arbitration. Under New York law "an assignee of a contract may avail itself of an arbitration clause contained therein even though the assignee was not a party to the underlying agreement and the contract does not refer to an assignee." *Matter of Vann v. Kreindler, Relkin & Goldberg*, 78 A.D.2d 255, 259, 434 N.Y.S.2d 365, 368 (N.Y. App. Div. 1980) (internal quotation marks and citation omitted); *see also Lipman v. Haeuser Shellac Co., Inc.*, 289 N.Y. 76, 81, 43 N.E.2d 817, 819 (N.Y. 1942); *Icdas Celik Enerji Tersane Ve Ulasim Sanayi A.S. v. Travelers Ins. Co.*, 81 A.D.3d 481, 483, 916 N.Y.S.2d 88, 90 (N.Y. App. Div. 2011).[6]  However, it does not appear Douglas assigned the right to compel arbitration.  The assignment does not mention arbitration, nor does it purport to assign all of Douglas's rights under the agency agreement, which would include the

---

[6] Interestingly, ALICO operates on the assumption that the right to compel arbitration is not assignable.  The most it says on the matter is that "Douglas' assignment of his commissions to [Union Services] did not assign the right to compel arbitration (if that were even possible), amend the Agent Agreement to expand the arbitration provision, or assign the entire Agent Agreement."  (Doc. 30 at 10).  ALICO further contends that the arbitration provision's reference to the original contracting parties, "the Company and the Agent/Broker," precludes ALICO from being compelled to arbitrate with other parties.  (Doc. 24-1 at ¶ 17).

right to compel arbitration. It only assigns the commissions Douglas is entitled to receive pursuant to his agreement with ALICO.

Moreover, the Plaintiffs do not address the effect of the assignment. Their argument is that the case must be submitted to arbitration because the counterclaim is "based on" the agency agreement between Douglas and ALICO, which contains a mandatory arbitration clause, and that the claims in the complaint are "intertwined and interrelated" to this counterclaim. Thus, the Plaintiffs have failed to meet their burden to show an agreement to arbitrate exists between Union Services and ALICO. *See Solar & Envtl. Techs. Corp. v. Zelinger*, 726 F. Supp. 2d 135, 143-44 (D. Conn. 2009) (holding purported assignee seeking to compel arbitration did not establish by a preponderance of the evidence it could enforce the assignor's arbitration agreement as required by New York law).

### III.   CONCLUSION

For the foregoing reasons, the Plaintiffs' motion to compel arbitration (Doc. 28) is **DENIED**.

**SO ORDERED**, this 26th day of March, 2014.

>                       S/ Marc T. Treadwell
>                       MARC T. TREADWELL, JUDGE
>                       UNITED STATES DISTRICT COURT