IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| FIRST BENEFITS, INC. and UNION SERVICES OF AMERICA, LLC, ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | CIVIL ACTION NO. 5:13-CV-37 (MTT) |
| AMALGAMATED LIFE INSURANCE COMPANY, ) ) ) ) | |
| Defendant. ) ) | |

## ORDER

Before the Court is Defendant Amalgamated Life Insurance Company's ("ALICO") amended motion for summary judgment. (Doc. 49). Plaintiffs First Benefits, Inc. ("First Benefits") and Union Services of America, LLC ("Union Services") assert various claims arising out of an alleged partnership between ALICO and the Plaintiffs. After oral argument on ALICO's original motion for summary judgment (Doc. 33), the Court ordered ALICO to amend its motion to address whether the terms of the alleged partnership agreement have been sufficiently shown so that the agreement is capable of enforcement (Doc. 47). For the following reasons, the amended motion for summary judgment is **GRANTED in part and DENIED in part**.

### I. ALICO'S OBJECTIONS

A.   **Failure to Disclose/Supplement Under Rule 26**

   1.   **Damages**

ALICO objects to the Plaintiffs' evidence on their theory and computation of damages. Rule 26 requires parties to make certain initial disclosures without awaiting a

discovery request, including "a computation of each category of damages claimed," and to supplement their disclosures if "in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(a)(1)(A)(iii), (e)(1)(A).  Pursuant to Fed. R. Civ. P. 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  However, "[i]n addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard: (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure; (B) may inform the jury of the party's failure; and (C) may impose other appropriate sanctions … ." Fed. R. Civ. P. 37(c)(1)(A)-(C).

Because of the Plaintiffs' claim for accounting, ALICO's objection is largely moot.[1]  Nonetheless, it is clear the Plaintiffs failed to provide a computation of their lost profits theory of damages.[2]  Because the Plaintiffs have not responded to ALICO's objection and thus have provided no explanation, the Court cannot say their failure to disclose this information was substantially justified.  Further, due to the fact discovery

---

[1] *See infra* Part III.B.iv and note 2.

[2] Their Rule 26(a)(1)(A)(iii) disclosure states:

> Plaintiffs assert that Defendant owes commissions, profits, bonuses, accounts and other property of Plaintiffs' which Defendant converted to its own use and is not entitled. Damages will be in an amount to be determined at trial. Plaintiffs also seek [their] costs, expenses, and attorneys' fees for pursuit of this action, which will be calculated at the close of the action or trial.

(Doc. 43-3 at 5).  This disclosure arguably contemplates that an accounting would be necessary to determine damages.

closed in February and it seems the Plaintiffs had not fully formulated their theory of damages until their latest response brief,[3] which was filed on September 11, 2014, the Court cannot say the failure was harmless.

The Court could decline to consider the Plaintiffs' evidence on damages at all. Fed. R. Civ. P. 37(c)(1). However, the Court does not believe the exclusion sanction is appropriate in this case due to the fact that there has been a failure to conduct meaningful discovery on both sides.[4] At the pretrial conference, the Court will determine the appropriate sanction, most likely an instruction to the jury.

### 2. Affidavit of Josh Spivak

ALICO objects to Josh Spivak's affidavit because Spivak, who is associated with Benefit Associates,[5] was not named in the Plaintiffs' initial disclosures. *See* Fed. R. Civ. P. 26(a)(1)(A)(i) (requiring the Plaintiffs to disclose the name and contact information of "each individual likely to have discoverable information … that [they] may use to support [their] claims or defenses"). The Plaintiffs contend their failure to disclose was harmless because it does not surprise or prejudice ALICO. While it is true that Benefit Associates has been mentioned throughout this litigation, there are only two references to Spivak that the Parties have pointed to: (1) an interrogatory response where he and several other individuals are listed, and (2) a topic noticed for ALICO's Rule 30(b)(6) deposition

---

[3] Even at oral argument, Plaintiffs' counsel could not precisely articulate what damages they were seeking.

[4] ALICO elected to convene no depositions and then moved for summary judgment primarily on the basis that there is a lack of evidence to support the Plaintiffs' claims. Not surprisingly, the Plaintiffs responded with affidavits that are largely unrebutted due to the lack of depositions.

[5] Spivak was apparently the CEO and President of Benefit Associates. As discussed below, the Plaintiffs contend ALICO shut them out of the partnership and allowed Benefit Associates to service certain accounts the Plaintiffs brought to the partnership.

where he is erroneously referred to as *John* Spivak.  (Docs. 32-1 at 8; 43-6 at 6).  This is hardly adequate notice to ALICO that Spivak might have discoverable information the Plaintiffs intend to rely on to support their claims.  Though ALICO did not conduct much discovery, the Court cannot fault it for failing to depose someone it did not know the Plaintiffs would rely on to support their case.  Therefore, exclusion is an appropriate sanction.  *See* Fed. R. Civ. P. 37(c)(1).  The Plaintiffs are prohibited from relying on testimony from Spivak.

### B.    Roscoe Douglas's Affidavits

The Plaintiffs submitted two affidavits of Roscoe Douglas, who is the Plaintiffs' sole owner.  ALICO first objects to Exhibit B to Douglas's first affidavit because it is an incomplete string of emails.  ALICO attaches the complete string of emails to its notice of objection but also notes that even the "complete" string of emails produced to it during discovery is missing the top portion.  The Plaintiffs explain the top portion of the email was redacted because it was forwarded to counsel and contained privileged information.  Yet, the Plaintiffs did not provide a privilege log as ALICO requested.  *See* Fed. R. Civ. P. 26(b)(5)(A) (explaining party claiming privilege must expressly make the claim and "describe the nature of the documents … not produced or disclosed" to "enable other parties to assess the claim").  ALICO's contention that the email chain is incomplete is not a proper basis for exclusion.  Rather, ALICO may introduce other parts "that in fairness ought to be considered at the same time."  Fed. R. Evid. 106.  ALICO did this by filing the rest of the email chain produced to it.  Though the Plaintiffs should have complied with Rule 26(b)(5)'s requirements in redacting the top portion of the email, ALICO has not asked the Court to assess their claim of privilege.

ALICO also objects to two statements in Douglas's first affidavit as inadmissible hearsay: (1) "I was informed that hiring Benefit Associates to enroll the account was a business decision"; and (2) "At this meeting I reminded Amalgamated that First Benefits and USA had brought Boston Mutual's account to Amalgamated; helped facilitate the partnership between Amalgamated, Boston Mutual and USA/First Benefits; and had continued to share the profits on all enrollments per the partnership agreement." (Doc. 36-1, ¶ 20). The affidavit makes it clear that representatives of ALICO made the first statement to Douglas. Thus, it is an admission of a party-opponent and therefore not hearsay. Fed. R. Evid. 801(d)(2). As to the second statement, it is not hearsay if not considered for the truth of the matter asserted, i.e., that the Plaintiffs actually did the things in the statement. Fed. R. Evid. 801(c).

Finally, ALICO objects to several statements in both Douglas's first affidavit (Doc. 36-1, ¶¶ 6-12, 15, 16, 18, 20-22, 25) and supplemental affidavit (Doc. 51-2, ¶¶ 4-16) as being conclusory. For the majority of these statements, the Court disagrees. Some of the statements ALICO cites, such as those referring to the Parties as "partners" or saying the October 22, 2004 letter "solidified the partnership," could be deemed conclusory in isolation. However, the statements must be read in the context of the affidavit as a whole. The fact that Douglas calls the Parties "partners" or says they split "profits" is certainly not enough to create a genuine issue of fact on whether there was a partnership. But these statements, when read in conjunction with the other details provided in both affidavits, do not make the affidavits conclusory or inappropriate to consider on summary judgment.[6]

---

[6] ALICO also objects to the portions of Douglas's supplemental affidavit where he relies on two exhibits for the proposition that a certain number of enrollments took place at certain times and

ALICO's objection is sustained with regard to the statement in Douglas's first affidavit: "Based on my experience with these accounts, the loss resulting to First Benefits and [Union Services] is approximately $700,000."  (Doc. 36-1, ¶ 25).  Douglas provides no detail regarding how he calculated that amount, nor does he say the accounts on which it is based.

### C.   Plaintiffs' Additional Material Facts[7]

After responding to each of ALICO's material facts, the Plaintiffs included additional material facts to which ALICO has objected.  ALICO's objections can be grouped into the following categories: (1) objecting to the Plaintiffs' citing the amended complaint in support of a fact because the amended complaint is not evidence; (2) objecting that a fact is not "material to the issues raised on summary judgment"; (3) objecting that the evidence used to support certain facts contradicts the Plaintiffs' prior interrogatory responses; (4) objecting that the evidence used to support certain facts was not previously disclosed in the Plaintiffs' prior interrogatory responses; and (5) objecting that the fact is not supported by the record citation.

As to the first category of objections, the Court agrees the amended complaint is not evidence, but the Plaintiffs never solely cite the amended complaint for any of their material facts.  As to the second category of objections, the Court will not rely on any

---

that the Parties split the profits.  While the exhibits do not show that the Parties actually split any profits, they do support that certain enrollments took place and show the dollar amount of premiums.  One is a memo from Douglas to John Mason dated October 19, 2005, summarizing premiums written at four locations.  (Doc. 51-2 at 8-10).  The other is an email from Mark Lane at Union Services to John Mason dated June 22, 2006, summarizing enrollments at four locations.  (Doc. 51-2 at 11-15l).

[7] Because the Plaintiffs' responses to ALICO's statement of material facts do not have any bearing on the outcome of the motion, the Court does not separately discuss ALICO's objections to them.

fact that is not "material" in order to determine whether summary judgment should be granted. Further, some of the facts to which ALICO objects contain background information that, while not material to a dispositive issue, nonetheless provides helpful context. As to the third category of objections, the contradictions ALICO points to are not material. While a party may not create a genuine issue of fact on summary judgment by submitting an affidavit that contradicts a prior sworn statement, none of the contradictions ALICO points to falls into that category.[8] As to the fourth category of objections, the Court will not exclude details of the partnership agreement not previously disclosed in interrogatory responses for the reasons discussed above in conjunction with the Plaintiffs' damages evidence.[9] However, the Court will determine whether a lesser sanction is appropriate at the pretrial conference. As to the fifth category of objections, the Court will not rely on either ALICO or the Plaintiffs' statements of facts without confirming there is record support for them.

---

[8] The additional details Douglas provides in his affidavits about the partnership do not directly contradict any of the interrogatory responses. The only direct contradiction is where Douglas states in his first affidavit that the Parties agreed to split profits on Boston Mutual products 66 2/3% and 33 1/3%, whereas the Plaintiffs' interrogatory responses say profits from Boston Mutual products were split 60% and 40%. (Docs. 32-1 at 5; 32-2 at 7; 36-1, ¶ 9). However, the difference in percentage is not material and is more properly impeachment material.

[9] ALICO focuses on how the only "change" to the terms of the October 22, 2004 letter (which the Plaintiffs contend forms the basis of the partnership between the Parties) Union Services discloses in its interrogatory response is that "Plaintiffs would retain ownership of previously enrolled Union accounts." (Doc. 32-2 at 6). Thus, ALICO contends the terms of the alleged partnership agreement are limited to the October 22 letter plus the one change disclosed in Union Services' response. In addition to asking Union Services to describe any "changes" in the October 22 letter, ALICO also asked each Plaintiff to "[d]escribe the terms of the partnership." (Docs. 32-1 at 5; 32-2 at 7). Both responses begin with: "In addition to the facts and information contained in the Complaint as amended … ." *Id.* Though these interrogatory responses may have been unartfully drafted, the Court will not sanction the Plaintiffs for coming forward with "new" information regarding the terms of the partnership agreement if the information is alleged in the amended complaint, which the interrogatory responses incorporated.

## II. BACKGROUND

First Benefits and Union Services are suing ALICO for breach of partnership agreement, breach of fiduciary duty, misappropriation of business opportunity of the partnership, breach of private duty, accounting, constructive trust and breach, attorneys' fees, and punitive damages.[10] ALICO provides life, accident, disability, stop loss, and voluntary insurance products. (Doc. 50-1 at 12:10-12). First Benefits and Union Services sell insurance products to employees. (Doc. 36-1, ¶ 3). It is clear from the record that the Parties had some sort of business relationship, but the nature and terms of that relationship are heavily disputed.[11]

In 2004, John Mason, a representative of ALICO, contacted Mark Lane and Roscoe Douglas and invited them to meet at ALICO's home office and discuss ALICO's insurance products. (Docs. 8, ¶ 8; 24, ¶ 8). At the time, Douglas and Lane each owned 50% of Union Services and served as officers of Union Services. Douglas was the sole owner and officer of First Benefits. Douglas is now the sole owner and officer of both Union Services and First Benefits. After this meeting, Mason sent Douglas and Lane a letter dated October 22, 2004, confirming an agreement reached between the Parties ("October 22 letter"). (Doc. 8-1). ALICO contends this letter was confirmation of a limited agreement between ALICO and Union Services regarding upcoming insurance enrollments in Florida. The Plaintiffs agree the letter describes logistics for three joint enrollment visits with UNITE HERE local unions in Florida, but they also contend the

---

[10] The Plaintiffs have conceded summary judgment should be granted on their fraud and conversion claims. Therefore, ALICO's motion is **GRANTED** as to those claims.

[11] ALICO disputes it had any sort of business relationship with First Benefits and maintains the only business relationship it had was with Plaintiff Union Services.

October 22 letter was the basis of a partnership between the Parties.  Neither side contends the letter itself is a written partnership agreement.

According to the Plaintiffs, after the 2004 meeting with Mason, the Parties had "multiple conversations" and decided to form a partnership.  (Doc. 36-1, ¶ 9).[12]  While it is unclear exactly when and where these conversations took place, Douglas does describe the basic terms of the partnership the Parties allegedly agreed to.  The Plaintiffs and ALICO would work together to conduct insurance enrollments for employees represented by unions at specific locations ("accounts")—either former clients of one of the Parties or other clients the Parties decided would be subject to the agreement.[13]  (Docs. 36-1, ¶¶ 8-9; 51-2, ¶¶ 4-6).  The Parties sold both ALICO insurance products and Boston Mutual insurance products.  (Doc. 36-1, ¶ 9).  However, the majority of products sold were Boston Mutual.  (Doc. 51-2, ¶ 16).

The Plaintiffs' role was to "provide introductions into its accounts, service the accounts, provide sales expertise, conduct enrollments, and obtain authorizations from employees to set up payroll deductions for products that were sold."  (Doc. 36-1, ¶ 10).  Though the Plaintiffs appear to claim in their statement of additional material facts that the Parties shared the expenses of enrollment (Doc. 51-3, ¶ 72), Douglas makes it clear that the Plaintiffs paid the enrollment expenses.  (Doc. 36-1, ¶ 9).  ALICO's role was to

---

[12] The precise onset of the alleged partnership is unclear.  In Douglas's first affidavit, he initially describes the October 22 letter as "solidifying the partnership" but then states two paragraphs later that he and Lane proposed forming a partnership with ALICO after the enrollments described in the October 22 letter were performed.  (Doc. 36-1, ¶¶ 6, 8).  Nonetheless, Douglas's position that the Parties agreed to form a partnership in 2004, whether before or after the October 22 letter enrollments, is virtually uncontroverted due to the minimal discovery done on both sides.

[13] Prior to the submission of Douglas's supplemental affidavit, it was not at all clear that the "partnership accounts" included anything more than accounts that were former clients of the Plaintiffs.

"set[ ] up one-on-one enrollment sessions with companies/unions found by either partner, set[ ] up payroll deductions, and process[ ] the information received at enrollments."  (Doc. 36-1, ¶ 10).  Each had authority to "manage" the enrollment staff, but it was "primarily the duty of" the Plaintiffs.  (Doc. 36-1, ¶ 7).

According to the Plaintiffs, the Parties agreed to split "profits" on both ALICO and Boston Mutual products sold, with "profits" apparently meaning a certain percentage of the premiums written for the products sold at the agreed upon locations.  (Doc. 51-2, ¶ 6).  The Parties would split the profits on Boston Mutual products with either 60% or 66 2/3% going to the Plaintiffs and either 40% or 33 1/3% going to ALICO.[14]  It is not clear how the Parties would split profits on ALICO products sold.  The Plaintiffs say they were to be split the same way as in the October 22 letter, but all the letter says regarding compensation for ALICO products sold is: "We have mutually agreed to the following enrollment compensation schedule with [Union Services].  ALICO's Worker Life (Decreasing Term) 20% level first year and all renewal years (2-10) commission." (Doc. 8-1 at 4).  Besides ALICO's objections discussed above, there is nothing in the record contradicting Douglas's sworn statement that the Parties did in fact agree to those terms.

The Plaintiffs claim that ALICO breached their agreement by not setting up one-on-one meetings.  (Doc. 36-1, ¶ 18).  The Plaintiffs further claim ALICO began allowing another enrollment company, Benefit Associates, or in-house enrollment agents to service the accounts the Plaintiffs brought to the partnership.  (Docs. 36-1, ¶¶ 19, 21,

---

[14] As discussed above, there is a contradiction between the Plaintiffs' interrogatory responses and Douglas's affidavit regarding the percentage.  *See supra* note 8.

22; 51-2, ¶¶ 14, 15). On June 3, 2011, the Plaintiffs sent ALICO a letter purporting to terminate the partnership. (Doc. 36-1, ¶ 26).[15]

## III. DISCUSSION

### A. Summary Judgment Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A factual dispute is genuine only if 'a reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)). The movant may support its assertion that a fact is undisputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). But if the nonmoving party bears the burden of proof at trial, "the moving party is not required to 'support its motion with affidavits or other similar material *negating* the opponent's claim.'" *Four Parcels of Real Prop.*, 941 F.2d at 1437 (quoting *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986)). The moving party "simply may show … that there is an absence of evidence to support the nonmoving party's case." *Id.* at 1438 (internal quotation marks and citation omitted).

"Assuming the moving party has met its burden, the non-movant must then show a genuine dispute regarding any issue for which it will bear the burden of proof at trial."

---

[15] Though it does not affect the outcome of the motion, the Court notes that the Plaintiffs purport to attach a copy of this letter as "Exhibit D" to Douglas's first affidavit but failed to attach it.

-11-

*Info. Sys. & Networks Corp.*, 281 F.3d at 1224-25 (citing *Celotex Corp.*, 477 U.S. at 324). The non-moving party must rebut the movant's showing "by producing … relevant and admissible evidence beyond the pleadings." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011). The non-moving party does not satisfy its burden "if the rebuttal evidence 'is merely colorable, or is not significantly probative' of a disputed fact." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). However, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. … The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

### B. ALICO's Amended Motion for Summary Judgment[16]

#### 1. Terms of the Contract

ALICO argues that the terms of the Parties' agreement are too indefinite to be enforced, which was the concern expressed by the Court in the August 7, 2014 Order directing ALICO to amend its motion for summary judgment. (Doc. 47). One problem with this argument is ALICO ignores evidence the Plaintiffs submitted in response to its initial motion for summary judgment—specifically Douglas's first affidavit. Additionally, the Plaintiffs have submitted a supplemental affidavit in response to ALICO's amended motion that provides further detail about the alleged partnership agreement. Douglas describes specific accounts the Parties agreed would be subject to their business arrangement, the amount of premiums written and the money split on enrollments for specific years for some of these accounts, and the roles each Party was supposed to

---

[16] ALICO reiterates its position in both its original and amended motions for summary judgment that all of the Plaintiffs' claims are barred by the statute of limitations. The Court previously rejected this argument in denying ALICO's motion to dismiss. (Doc. 23).

perform regarding the accounts. (Doc. 51-2). Therefore, the Court cannot find as a matter of law that the contract between the Parties is too indefinite to be enforced.

### 2. Existence of a Partnership

ALICO next contends, as it did in its original motion, that even if the terms of the Parties' contract are definite enough to be enforced, there is no evidence the Parties formed a partnership.[17] Under Georgia law, "[a] partnership is an association of two or more persons to carry on as co-owners a business for profit." O.C.G.A. § 14-8-6(a). "A partnership results from a contract, which may be either express or implied." *Durkin v. Platz*, 920 F. Supp. 2d 1316, 1334 (N.D. Ga. 2013) (citing *Clark v. Schwartz*, 210 Ga. App. 678, 436 S.E.2d 759, 760 (1993)). In the absence of an express partnership agreement, "[f]actors that indicate the existence of a partnership include a common enterprise, the sharing of risk, the sharing of expenses, the sharing of profits and losses, a joint right of control over the business, and a joint ownership of capital." *Jerry Dickerson Presents, Inc. v. Concert S. Chastain Promotions*, 260 Ga. App. 316, 323, 579 S.E.2d 761, 768 (2003) (footnote omitted). Additionally,

> The receipt by a person of a share of the profits of a business is prima-facie evidence that he is a partner in the business; provided, however, that no such inference shall be drawn if profits were received in payment of the following, even though the amount of payment varies with the profits of the business: … (B) Wages, salary, or other compensation to an employee or independent contractor.

---

[17] Rather than respond to ALICO's argument for a second time, the Plaintiffs refer to their response to ALICO's original motion. For reasons not apparent to the Court, the Plaintiffs felt the need to attach all documents submitted in response to ALICO's first motion as a 162-page exhibit even though these documents are already on the docket.

O.C.G.A. § 14-8-7(4). Because the Parties agree there is not an express partnership agreement,[18] the Court must determine if the Plaintiffs have created a genuine issue of fact on the existence of a partnership based on the above factors.[19]

At the very least, the Plaintiffs have created a genuine issue of fact on whether the Parties split profits from their business venture, which under Georgia law is prima-facie evidence of the existence of a partnership. Though ALICO contends the "profit" split should really be characterized as compensation to an independent contractor, there is some evidence this was not the case. Namely, the Parties purportedly agreed to split certain revenue gained not only from the sale of ALICO's products, but also from the sale of Boston Mutual products. According to the Plaintiffs, prior to their arrangement with ALICO they kept 100% of the money they earned selling Boston Mutual products. This certainly cuts against finding that the 60% or 66 2/3%

---

[18] Based on the wording of Douglas's affidavits, the Plaintiffs' position might more aptly be characterized as conceding there was no express *written* agreement but contending there was an express *oral* agreement. *See Ghee v. Kimsey*, 179 Ga. App. 446, 446-47, 346 S.E.2d 888, 889 (1986). However, the Plaintiffs did not make this argument.

[19] Contrary to ALICO's argument, the Court does not interpret Georgia law to require that each factor above be present to find an implied partnership. First, O.C.G.A. § 14-8-7(4) explicitly states that sharing profits, *one* of the above factors, is prima-facie evidence of a partnership. Second, Georgia cases describe these characteristics as factors which indicate the existence of a partnership—not as essential elements that must be present for a partnership to exist. *See, e.g., Jerry Dickerson Presents, Inc.*, 260 Ga. App. at 323, 579 S.E.2d at 768; *Aaron Rents, Inc. v. Fourteenth St. Venture, L.P.*, 243 Ga. App. 746, 747, 533 S.E.2d 759, 761 (2000); *see also Hayes v. Irwin*, 541 F. Supp. 397, 415 (N.D. Ga. 1982) ("Given the variety of relationships that have been deemed to be partnerships, it is difficult, if not impossible, to formulate an all-encompassing definition of partnership."). In *Larson v. Tandy Corp.*, the case ALICO cites for the proposition that all the above factors must be present, the Georgia Court of Appeals stated, "While it is true that a partnership exists where there is a joint enterprise, a joint risk, a joint sharing of expenses, and a joint interest in the profits and losses, a partnership is not created solely by an agreement to share profits." 187 Ga. App. 893, 894, 371 S.E.2d 663, 665 (1988) (citation omitted). (Obviously, this statement is modified by O.C.G.A. § 14-8-7(4).) The court did not say there *must* be evidence of a joint enterprise, joint risk, joint sharing of expenses, *and* a joint interest in profits and losses for a partnership to exist.

"profit" was in fact compensation paid to them as independent contractors. Additionally, the Plaintiffs did not merely service accounts ALICO directed them to, which would point in favor of them being independent contractors. Instead, they serviced accounts which all Parties agreed would be subject to their business arrangement. Even if the revenue split was a commission paid by Boston Mutual based on the Parties' selling its products, it could still be a profit from the Parties' business arrangement.

### 3. Evidence Contradicting the Existence of a Partnership

ALICO argues that not only is there no evidence the Parties formed a partnership, but the evidence contradicts this notion. Specifically, ALICO points to: the October 22 letter's reference to "commissions," emails from Douglas that ALICO contends show the Parties had a typical enrollment provider-insurance provider relationship as opposed to a partnership, and an agent agreement Douglas executed agreeing to serve as an independent contractor to procure applications for ALICO products. Even if the evidence suggests the Parties' business relationship was something other than a partnership, it does not change the fact that there is a genuine dispute on the existence of a partnership. Thus, summary judgment is not appropriate on this basis.

### 4. Ability to Prove Damages

ALICO initially contended there was no evidence of damages, to which the Plaintiffs responded by submitting Douglas's supplemental affidavit listing (1) the amount of premiums written on four different accounts for the sale of Boston Mutual products during specific enrollment times; (2) the amount of money split from those enrollments; and (3) the length of time the Plaintiffs were prevented from enrolling those

accounts as previously agreed. (Doc. 51-2, ¶¶ 8-13). Based on the numbers in Douglas's supplemental affidavit, the Plaintiffs contend there is sufficient evidence from which a jury could calculate damages at least as to those four accounts. In addition to its objection to the new evidence not previously disclosed, ALICO contends the lost profit damages are speculative as to causation and amount because there is no evidence of what revenues (if any) were earned on these accounts during the years for which the Plaintiffs are seeking damages. ALICO also maintains that, at most, the evidence shows an agreement to split gross profits because there is no evidence of what the enrollment expenses were in order to calculate the actual profit, if any.

What neither side specifically addresses is the effect of the Plaintiffs' request for an accounting on their ability to prove the amount of damages for their other claims. The most the Plaintiffs say is that their different claims have different measures of damages: "[W]ith regard to claims for accounting and constructive trust, Plaintiffs are entitled to that which they were wrongfully excluded from in the partnership business." (Doc. 51 at 8).[20] All ALICO says is that it is entitled to summary judgment on the Plaintiffs' remedial claims—including the claim for an accounting—because it is entitled to summary judgment on the Plaintiffs' substantive claims.

Pursuant to O.C.G.A. § 14-8-22, a partner has the right to a formal accounting of partnership affairs "[i]f he is wrongfully excluded from the partnership business or possession of its property by his copartners … [or] [i]f the right exists under Code Section 14-8-21." According to section 14-8-21, "[e]very partner must account to the partnership for any benefit, and hold as trustee for it any profits derived by him without

---

[20] An accounting is more properly described as an equitable remedy rather than a separate claim.

the consent of the other partners from any transaction connected with the formation, conduct, or liquidation of the partnership or from any use by him of its property." O.C.G.A. § 14-8-21(a). The Plaintiffs have shown a genuine dispute on both the existence of a partnership and whether they were wrongfully excluded from the partnership business.

Recently, the Eleventh Circuit addressed the converse of this situation and held the district court erred in denying the plaintiff's request for an accounting on the basis that the plaintiff had an adequate remedy at law in the form of its breach of contract action. *Zaki Kulaibee Establishment v. McFliker*, ___ F.3d ___, 2014 WL 6434857, at *10 (11th Cir.) ("[W]ithout the foundational information that an accounting would have provided, Zaki was incapable of quantifying its damages, and was thereby precluded from obtaining any meaningful relief."). Applying Florida law, the Eleventh Circuit found that establishing the existence of a fiduciary relationship between the parties (consignor-consignee in that case) was sufficient to establish the plaintiff's right to an accounting. *Id.* In the present case, the Plaintiffs have shown a genuine issue on whether they are entitled to an accounting.

If the Plaintiffs ultimately prove they are entitled to an accounting, the accounting may show what amounts of premiums, if any, were written for Boston Mutual products for the partnership accounts. In turn, the results of the accounting may afford a basis for the fact finder to determine what damages the Plaintiffs would be entitled to. Whether the fact finder would be able to determine that amount with reasonable certainty is unclear. However, it is clear summary judgment is not appropriate on the basis of the Plaintiffs' inability to prove damages at this point.

## IV. CONCLUSION

ALICO's amended motion for summary judgment (Doc. 49) is **GRANTED in part and DENIED in part**.[21]  ALICO is only entitled to summary judgment on the Plaintiffs' fraud and conversion claims.  The Court will determine the appropriate sanction for the Plaintiffs' failure to disclose certain information in discovery at the pretrial conference.

**SO ORDERED,** this 8th day of December, 2014.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT

---

[21] Because ALICO's arguments raised in its initial motion are discussed above, ALICO's initial motion for summary judgment (Doc. 33) is **DENIED**.